**Federal Defenders OF NEW YORK, INC.**

52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

*Southern District*

David E. Patton
*Executive Director
and Attorney-in-Chief*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

June 24, 2020

**By ECF/Email**
Honorable Kevin Nathaniel Fox
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    <u>United States v. Jakia Bland</u>, 20 Cr. 155 (KNF)

Honorable Judge Fox:

    Jakia Bland is a single mother whose life revolves around children—her own two kids, Jaedyn and ▮▮▮▮▮, as well as the students she supports at the Bronx charter school where she has worked for seven years. This case marks her first-ever contact with the criminal legal system, despite having faced many challenges in her almost 39 years.

    Ms. Bland has pleaded guilty to a misdemeanor, theft of government funds, under 18 U.S.C. § 641. For ten years, she underreported her income in Section 8 housing applications and received a larger voucher than she was entitled to under the rules of the Section 8 program. She has accepted responsibility for her actions by pleading guilty, agreeing to repay $124,008.75, and searching herself for answers about what led her astray. She now realizes that, although her conduct was motivated by a desire to support her children, "the very thing that [she] was doing to give them a 'better' life was actually putting them at risk for life without [her]." <u>See</u> Exh. A, Letter of Jakia Bland. She also realizes that her lifelong financial insecurity may help explain her behavior but in no way excuses it.

    I ask your Honor to impose a non-custodial sentence for Ms. Bland, as the Probation Department has recommended. <u>See</u> Presentence Report (PSR) at 22. Her misconduct, while serious, is not characteristic of the strong, principled, and giving woman she is today: a devoted mother, loving friend, hard-working professional, aspiring college graduate, church community member, and person of extraordinary compassion. A non-custodial sentence would allow the Court to monitor her restitution payments while she continues to work, engage in her treatment, participate in her worship community, and—most importantly—raise her children.

**I. Background**

  Jakia Bland was born at St. Luke's Hospital in Manhattan on ▮▮▮▮, 1981. She arrived two months early, which her mother, Pamela, attributed to stress caused by the brazen infidelity of Ms. Bland's father, James. Although Pamela and James technically were still coupled during Pamela's pregnancy, James openly conducted a relationship with another woman, whose own child—fathered by James—was born within weeks of Ms. Bland's birth.

  James was in and out, but he eventually left home, abandoning Pamela to raise Ms. Bland and her brother Jarrell largely on her own. Their life was not easy. As Ms. Bland explains, their living quarters were "always crowded and cramped" and their finances were tight, but her mother was determined to create opportunities for her kids. See Exh. A at 1. Pamela worked full-time, first as a public school teacher and then as a social worker at the New York Foundling, one of New York's largest and oldest child welfare agencies. Her experience in the City's public schools prompted her decision to enroll Ms. Bland and Jarrell in Catholic School outside of their neighborhood, even though she had to borrow money to pay their tuition. Now that Ms. Bland, too, is a single mom with a demanding full-time job and a laser focus on providing for her kids, she understands the struggle and sacrifice Pamela endured.

  After graduating from high school in 1999, Ms. Bland started college at SUNY Old Westbury. In 2002, her daughter Jaedyn was born. At first, Ms. Bland tried to balance her studies with her new responsibilities as a mother. But a year into their life as a young family, Jaedyn's father Larry booted Ms. Bland and one-year-old Jaedyn from his apartment. Traumatized, Ms. Bland dropped out of school, and she and Jaedyn moved back into her mother's small apartment in Pelham Parkway.

  By the time Jaedyn was two-years-old, Ms. Bland was desperate for her own space and to get back on the path she had envisioned for herself as a teenager. She moved out into her own apartment with Jaedyn and, in 2005, got a job at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. While she was thrilled to be working, she soon found herself daunted by the mounting costs of rent, childcare, transportation, utilities, food, and clothing. ▮▮▮▮'s arrival in 2011 brought the family more joy, but also more financial difficulty.

  In March of 2013, Ms. Bland was hired as an Operations Assistant at the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, a charter school in the Bronx. The job, while challenging, presented Ms. Bland with a terrific opportunity to better her life and the lives of her kids. Within her first six months on the job, however, Ms. Bland's mother Pamela—her rock and best friend—passed away.

  Pamela's death shattered Ms. Bland's world. Pamela had gone into the hospital with a general feeling that she was not well. Over just a few months, she

deteriorated rapidly and was placed on hospice before ever having received a conclusive diagnosis. Although doctors suspected cancer, they did not even have the opportunity to have tests or biopsies returned before Pamela passed away.



During Pamela's illness, Ms. Bland showed up for her mom every day. Ms. Bland's godmother, Reverend Addie Banks, remembers this time, and how it stretched Jakia thin. She writes, "Even in her grief, Jakia maintained attentiveness to her children, extended family, and her work. . . . Although she held a full time job as a single mom of two, she always made time to ensure that her mom had the best care. During her mom's illness she was present every day, children in tow." See Exhibit C, Letter of Rev. Addie Banks.

Pamela's death remains the defining event of Ms. Bland'a life. For months after Pamela died, Ms. Bland could not sleep. But Jaedyn was 12-years-old, and ▇▇▇▇ was just two weeks' shy of his second birthday, so Ms. Bland had no choice but to get back on her feet quickly. She enrolled Jaedyn in grief counseling to process the loss of her grandmother and soldiered on herself. Seven years later, Ms. Bland still misses her mother every day and cannot tell the story of her loss without crying.

In the years since, Ms. Bland has concentrated all her energy on her kids and her work. Raising two kids alone in New York City while working full-time is beyond challenging. But this model of motherhood is familiar to Ms. Bland; she is doing the same balancing act that her own mother performed when she raised Jakia and Jarrell on her own while also working demanding full-time jobs.

Jaedyn and ▇▇▇▇ are the central focus of Ms. Bland's life. As now 18-year-old Jaedyn explains, "Everything my mom does is for my brother and I; she is constantly trying to make sure that we have what we need to do well in the world." See Exh. B, Letter of Jaedyn Gonzalez. And without a doubt, Ms. Bland's efforts to

Hon. Kevin N. Fox                                                                                                June 24, 2020
US v. Jakia Bland, 20 Cr. 155                                                                              Page 4 of 8

create opportunities for her kids have paid off.

▬▬▬▬▬▬, now 8-years-old, attends elementary school at ▬▬▬▬▬▬ and participates in numerous extra-curricular activities including a basketball team, a chess club, and a swimming club. Since March, in addition to performing her own job remotely, Ms. Bland has been in charge of his remote learning during the COVID-19 pandemic. Jaedyn is about to graduate from ▬▬▬▬▬▬, the same Catholic School her mother attended, and she is set to begin college this fall at ▬▬▬▬▬▬, focusing on pre-veterinary studies. Of course, uncertainty looms. Alongside the bright image of freshman year that Jaedyn has long envisioned, she holds two alternate pictures: one of attending college remotely in the fall due to the pandemic, and another in which she delays college entirely to live at home taking care of her brother if her mother is incarcerated. Recently, the latter possibility has kept her up at night.

Ms. Bland brings the same dedication to ▬▬▬▬▬▬, the charter school where she has worked since 2013. Morrisania, where the school sits, is known as one of the toughest sections of the Bronx, with one of the highest poverty rates.[1] The students at ▬▬▬▬▬▬, according to Ms. Bland, are used to being abandoned. They preemptively act up against new teachers and authority figures as a defense mechanism. And yet, despite this difficult climate, Ms. Bland has worked there for

---

[1] See Rocco Parascandola, Elizabeth Elizalde, Wes Parnell and Graham Rayman, NYC's top cop James O'Neill pledges to zero in on six precincts with higher violent crime, Daily News (Jan. 23, 2019, 8:00 AM) (citing the 42nd police precinct, of which Morrisania is a part, as having a violent crime rate more than twice that of the rest of the city); see also New York City Neighborhood Data Profiles, BX03: Morrisania/Crotana, NYU FURMAN CENTER, available at https://furmancenter.org/neighborhoods/view/morrisania-crotona (putting Morrisania's poverty rate at 35.8% compared with 18% citywide and 28% for the Bronx as a whole).

seven years, earning the trust and admiration of students, parents, teachers, and administrators.

Her work there is emotionally taxing. There is a drug rehabilitation center across the street. It is not unusual to see students fighting or joining gangs. Many of the parents whose kids attend the school are struggling themselves, with court cases, substance abuse issues, poverty, homelessness, and mental illness. Much of Ms. Bland's work centers on parent communication and interaction. She believes she is well-suited for this work because she can relate to the parents. She knows what it is like to struggle emotionally and financially. She knows what it is like to grow up without a father. She knows what it is like to want the best for a child and to feel like disaster is always around the corner.

But Ms. Bland's ability to connect with the ▓▓▓▓▓▓▓ families is not just a product of shared experience. It is also the product of her extraordinary compassion and support for the students, parents, and loved ones she meets. Indeed, her devotion to the ▓▓▓▓▓▓▓ community extends well beyond the conventional boundaries of her position at the school. When one student's grandmother, who had raised him, was very sick and needed a kidney, Ms. Bland genuinely considered donating one of her own. She did not, only because the woman received a transplant from another source. When one young woman lacked money to purchase photos on school picture day, she came to Ms. Bland's office dejected and embarrassed. She walked out with $20 that enabled her to join her peers and take home professional school photos. On another occasion, Ms. Bland donated all of ▓▓▓▓▓▓▓s baby clothes to a parent who could not make ends meet. When another child said he was dreading Christmas because Santa Claus never came to his house, Ms. Bland promised him a visit from Santa that year. She gave him wrapped gifts when Christmas came around. This kind of generosity is characteristic of Jakia Bland. As her friend Aretha Simmons observes, "Jakia is always willing to lend a helping hand to anyone in need. I have watched her, with all of the financial difficulty she experiences, buy clothing, coats, and uniforms for children that did not have these necessities." See Exh. D, Letter of Aretha Simmons.

Finally, in addition to the demands of work and childcare, Ms. Bland continues to pursue self-improvement in order to obtain more opportunities for her family. Before the pandemic, she was taking weekend classes back at SUNY Old Westbury, where she attended college until Jaedyn's father, Larry, kicked them out. She only needs a handful of additional credits in order to graduate and anticipates that a college degree will open up a world of professional options for her. She intends to re-enroll in the fall if possible.

Lately, Ms. Bland has also reconnected with her faith. About two years ago, she and her kids began attending services at The Worship Center in Harlem, which she describes as the most intimate religious experience she has ever had. In her

words, it has given her "a new perspective on life." Through religious contemplation and counseling with The Worship Center's leader, Apostle Byrd, she has realized that she has been operating in "survival mode" for her entire adult life, constantly fighting for resources to support herself and her family. Today, she professes an intention to slow down and trust that her hard work and her faith will see her through.

## II. The Offense Conduct

At the time when Ms. Bland began applying for Section 8 housing, she had been employed at ███████████████████████████████████, for a few years. Yet she failed to report her employment there on the affidavits of income she submitted to the New York City Housing Authority. The first time she submitted an affidavit without correctly listing her salary, her judgment was clouded, in her words, by the "pressure of trying to pay fair market rent, pay for school, re-pay debt, and just buy essentials like food and toiletries." See Exh. A. Looming in her mind was a fear of becoming homeless or having to move back into her mom's house, where she would share a sofa with Jaedyn and be forced to admit defeat. Each subsequent year until 2018, she compounded that initial bad act by submitting a virtually identical affidavit of income, failing to add her employment at ██████████ and, later, her employment at ██████████. One sign that she was not pausing to treat the affidavits with the careful attention they required, and was simply and thoughtlessly relying on her initial affidavit: Not only did she fail to add her changing sources of income on the forms, she also left Pamela Bland, her mother, as her emergency contact through her final affidavit of income in 2018, despite her mother's death in 2013.

It is important to note that Ms. Bland and her kids have not lived a life of extravagance on the public dime. Even with the assistance of the Section 8 program, her life as a single mother of two living in New York City has been a daily challenge and a constant hustle. She struggles to give her kids a life of opportunity while pinching pennies and rejecting unnecessary expenditures. But she still needs help from her grandfather to pay her kids' tuitions and even then reports significant debt. Her home, on display during a video call Presentence Interview and depicted in photographs shared with the Probation Department, is tidy and organized but by no means luxurious. This is not a case of a woman resting at home amidst her fineries while receiving assistance from the state. This is the case of a single, working mom raised by a single, working mom, desperately pursuing a better future for her kids.

Nevertheless, Ms. Bland knows that what she did was wrong, all the more so because her conduct went on for years. Without a doubt, this case involves the worst decision she has ever made, as exemplified by the fact that she had no prior criminal record. She is deeply and sincerely remorseful and ashamed. Her experiences of voluntarily surrendering herself, being handcuffed and processed by the Marshals, appearing before the Court, pleading guilty, and telling close friends and family about her charges have been upsetting, humiliating, and sobering. Her Section 8 voucher

is long gone. She now has a criminal record. And she has agreed to pay full restitution.

Those closest to Ms. Bland recognize her financial insecurity, and her devotion to her children, as the source of her poor decision-making. Her friend Aretha Simmons writes, "I truly believe that trying to juggle the financial difficulty of her life, mainly caring for her two children, caused Jakia to commit this act, one that she is truly ashamed of." See Exh. D, Letter of Aretha Simmons. Likewise, her daughter Jaedyn observes, "While I cannot fully explain my mother's actions, I know that she is immensely sorry. I know that she wasn't doing these actions to live a glamorous life, or buy fancy things. Much to the contrary, she was doing these things to simply support us, and make sure that we didn't have to become homeless." See Exh. B.

### III. Appropriate Sentence

In selecting a sentence, this Court takes as its "lodestar the parsimony clause of 18 U.S.C. § 3553(a)." United States v. Douglas, 713 F.3d 694, 700 (2d Cir. 2013). That provision "directs sentencing courts to 'impose a sentence sufficient, but not greater than necessary, to comply with' the factors set out in 18 U.S.C. § 3553(a)(2)." Id. "Those factors are, broadly speaking, proportionality, deterrence, incapacitation, and rehabilitation." Id. Here, the § 3553(a) factors overwhelmingly support a sentence without any period of incarceration.

Ms. Bland requires no further court intervention to accomplish the goals of deterrence, incapacitation, and rehabilitation. Her prosecution in this case came as a much needed shock to the system. Throughout, she has wrestled with the immorality and illegality of her actions as well as with the horrifying possibility of a punishment that could separate her from her children. She has discussed her conduct with her godmother, her friends, her daughter, her therapist, a social work intern and paralegal in my office, and with me. She has looked into her past for clues about how she might have made such a serious misstep. And she has emerged an even stronger, more focused, more resilient woman. In terms of proportionality, Ms. Bland has suffered. She has been punished. She will go forward with a criminal record, a hefty restitution bill, and an abiding shame at her own actions—actions now known to many in her life.

Finally, the need to prevent unwarranted sentencing disparities, another § 3553(a) consideration, supports a non-incarceratory sentence. See, e.g., 18 U.S.C. § 3553(a)(6). Judges in this District have repeatedly and consistently imposed non-incarceratory sentences for defendants who plead to misdemeanor theft of government funds in cases like Ms. Bland's, even with higher loss amounts. See, e.g., United States v. Victoria Krouser, 17 Cr. 39 (JLC) (18 months' probation where defendant fraudulently obtained more than $142,000 in NYCHA vouchers over a 14-year period by failing to report her husband's income and presence in her apartment,

even after questioned by investigators); United States v. Rachel Brandt, 18 Cr. 10 (RWL) (three years' probation where defendant pleaded to theft of more than $161,000 in government funds, despite guidelines range of 12 months' imprisonment); United States v. Milagros Grijalba, 18 Cr. 366 (KHP) (five years' probation where defendant made false statements to NYCHA for 12 years to obtain more than $84,000 in benefits she was not entitled to); United States v. Etta Yeboah, 19 Cr. 304 (HBP) (18 months' probation where defendant defrauded the government of more than $66,000 by renting out her apartment in public housing while residing in Pennsylvania); United States v. Joseph Yeboah, 19 Cr. 433 (KHP) (same).

## IV. Conclusion

In the words of Ms. Bland's godmother, Reverend Banks, Ms. Bland is a person who has "spent her life in the service of others but has made a poor judgment in regard to her own survival." PSR ¶ 47. She deeply regrets her actions in the instant offense. Given the hardship she has faced in her life, her devotion to her children and her job, and her current plans for a more positive future, I respectfully urge the Court to impose a sentence involving no more time in custody.

                                                       Respectfully submitted,
                                                       ___/s/_____
                                                       Ariel Werner
                                                       Assistant Federal Defender
                                                       (212) 417-8770 / (917) 751-2050

CC:    AUSA Andrew Rohrbach